Alright, next case on the docket is People of the State of Illinois v. Marston, No. 5-12-0510, and Mr. Lacey, you may proceed, sir. Good morning. The essence of this case, from the appellant's perspective, is an examination of behavior of a father and his, I'll try to speak up. Well, you're being recorded, so you have to. And his, at that time, 15-and-a-half-year-old daughter. The primary argument made in this case is centered around the decision of the court in a bench trial regarding the conviction of the defendant for domestic battery. The prelude to the exact behavior that the court found as proof beyond a reasonable doubt is troublesome to, of course, the appellant, and is the subject that we address primarily in our brief. We make the statement in our brief in several places that, in this case, the videotape was set up by the daughter. It was planned. It was a setting where she lived in the house and the father had the custody. So the custodial parent was the defendant, the alleged victim was his 15-and-a-half-year-old daughter. It seems obvious through the facts gleaned in the case that the 15-and-a-half-year-old daughter did not like the rules in dad's house. Her mother had recently come back in the picture and had filed a petition for change of custody. There is a long history of behavior as it relates to Alexis, who is the alleged victim, and her dissatisfaction, shall we call it, with the rules in her dad's house. The dad was the primary custodian for several kids, including one that was not his biological daughter, but he raised her because, in his view, it seemed like they do. In essence, the plan was in place, and the girls were the subject of a petition to modify custody. The older son, who was approximately a year older than the alleged victim, was not the subject of a petition to change custody to the mother. In this setting of dissatisfaction on the part of the 15-and-a-half-year-old daughter, Alexis, arises the defiance, not isolated, of course, to this particular teenager, to some degree an experience known in mankind with teenagers. What is troublesome is the fact that the daughter did what she felt needed to do, she needed to do, set up a camera secretly, and filmed what was a staged performance. And the performance started with her, of course, not telling her dad that she had a video camera set up and covered up so he wouldn't see it. The case runs through a number of things that made it obvious to the trial court in this bench trial that it was essentially a setup, and it was understandable. You know, what happened, how it happened. However, the videotape that was admitted into evidence was excised, so to speak, from these folks' lives and examined from every possible perspective, and it was available for that because there it was on a disc. The father objected to the disc being admitted into evidence because essentially there was only one witness for the prosecution, and that was the alleged victim. And the alleged victim did not, in the foundation for admission of the tape into evidence, which the defendant objected to, did not say that she had seen the entire DVD, did not say anything about all the behavior that was shown on the DVD, simply said that it showed her dad strike her. In the testimony at trial, didn't your client admit to the incident, the slapping? He did, most definitely. And do you take the position that the video was admitted for demonstrative evidence or substantive evidence? That's a good question. I'm not sure I have a precise answer because realistically I think it was admitted for any purpose that the state could have the court consider. Well, if you look at a photograph and there's somebody out there to say that this is a true and accurate portrayal, then it's demonstrative, isn't it? I mean, it's not being admitted for the substance. It's a demonstrative photograph. It's showing the scene, but somebody else could testify to it, right? Well, I think that can be the case. Well, that's why I'm asking. However, this was a videotape. Pardon me. It was a videotape that had audio. I don't know how you have that not be the actual proof in the case. Okay, so it's the audio portion that you're saying was substantive. Yes, but the combination, I think, is substantive. Okay. And I had another question. The scenario before this court right now, the posture of the pleadings, leads us to the plain error doctrine. Would you agree with that? I missed what you said. Because of the posture of the pleadings at the trial court level, this court has to review your case under the plain error doctrine. Do you agree with that? Yes. Okay, so is it your claim that it was plain error to admit this video? Yes. And the effect of the video, the method by which it was admitted, would have showed that the foundational witness, which would be the alleged victim, was able to say. She did not see the entire video. She claimed in her answers to the prosecution that the entire video showed things truly inaccurate. When she did not see the entire video, the entire video was not played in the court. What objection did you raise to the entire video that made the video false or a plain error admission? The objection raised at the time was essentially the same objections that were raised in previous pretrial motions and the fact that you could not accurately see the gestures, the condition of the room, because of the lighting. I think that the exact wording was it was too dark to accurately show what this secret video was purporting to show. Do you only concede that the standard of review here is for plain error because no post-trial motion was filed? I have to agree that no post-trial motion was filed. Is that why you concede that? Is the law that you have to file a post-trial motion in a bench trial to preserve error? It is now. Can you tell me, cite a case for that or whatever? There are numerous cases that say you do not have to file a post-trial motion to preserve errors in a bench trial so long as the issue was adequately raised in court and the court had an opportunity to rule on it. Your Honor, I think there was a Supreme Court case. Was there? In fact, I was surprised because… At least I know off the top of my head the rule was for a long time. No, it was. And that's unfortunately kind of the way I was viewing it, that it would be senseless to file a post-trial motion in a bench trial, particularly in light of what the court announced as its findings. It seems that the court didn't struggle with the concept of the state being required to prove that the behavior on the part of the defendant was unreasonable. You know, the court found that it was part of the burden of proof in the elements of the domestic battery. The state had to prove that the behavior of the defendant violated standards of reasonableness. That term is identified throughout all the seminal cases, standards of reasonableness. And I can't figure out exactly what these standards of reasonableness are. In other courts, there is some guidance given in the sense that the first analysis is, did the defendant go to this trial with the purpose of disciplining? So that has to be a fundamental first determination. Was the purpose of the interaction disciplined? And the facts in the case laid out very clearly that the 15-year-old had taken some other video, I hate to use the word twice, but had taken some other video of her brother and apparently was feeding videos to the mom who had a petition to change custody, relating to the girls but not the sons. Dad had worked a couple of days without sleep. The alleged victim knew that because she lived in the house. When this breach of the house rules was done about the alleged victim, taking a video of the brother and sending it to the mom, dad goes into the daughter's bedroom and goes there for the purpose of addressing a video that she sent her mom, essentially trying to feed mom information about why she wanted to live with mom. So dad goes into the daughter's bedroom to talk with her, expecting, and this is in the testimony in the case, expecting to ground her from the use of her phone, which apparently she had used and had a penchant for propensity to do with frequency. That wasn't what she used, though, and that's not how it ended up. Dad went into the room, to the bedroom, where the camera was already set up. Before dad even comes in, you can see, kind of see, it's a dark video, you can see the daughter, after having set up the camera, turns it on, and you see her dumping the contents of her drawers, the chest of drawers, and dramatically flipping her hand. It was an exercise in something that apparently was important to the teenager, but it was certainly a dramatic flare. We couldn't see the way the room was trashed, as the father referred to it, so when he went in to discuss simply the behavior that had happened before then, he went in to see a room that had been, according to his words, trashed. Daughter admits that she really wasn't exercising good behavior, she was mad, and she wanted to get him. She had an agenda, she provoked him, and you can see it in the videotape, that probably shouldn't have been admitted into evidence in the first place, but was. There is interaction. It's a 35-minute ordeal. The court leaned heavily on and found that the words the father used made his behavior unreasonable. And that led me to ask, well, how do you measure one ingredient at a time? Add this one. Now we're still okay. Add that one. Now we're still okay. Add this one. He used the F word several times, the exact number. The trial judge knew the exact number of times the defendant had used several words. So with the ever-increasingly unreasonable behavior of the daughter, who he has an obligation and a duty to discipline, has the duty to try to get the point across. In our society, we certainly see a lot of failures of even trying in some cases, but having that duty, he goes into the room, intends to ground her from her phone, sees the mess in front of him, and it goes on and on and on. The exact physical contact, the slapping, he doesn't deny it. He never did deny it. It's a matter of whether or not in his mind he had an alternative when his daughter kept refusing and defying him. This wasn't a, you know, there she is and I'm mad at her, and he ran down the hall and slapped her. No. It was an ever-escalating situation. The troublesome part is must the father's behavior be measured in a sense that every element of the dad's behavior must be reasonable in face of the daughter whose behavior is obviously unreasonable. Where do you draw the line? What do you do? Unfortunately, when it's excised on a videotape, it gives us, it gives some folks the ability to look at it and judge it with no other detail, and that's the part that is troublesome. The law does not give direction.  It doesn't say there doesn't have to be any bodily harm. You know, it doesn't have to be just that. It can be domestic battery in spite of this, in spite of that, but we hear reference and see it in the cases, standards of reasonableness. What are they? Where are they written? Let's see them. There is no guidance. The judge's decision reflects no fundamental findings, starting with what? Starting with the fact that he admitted slapping her. He slapped her once, put his hand on her jawline and pushed her head back against the mirror. She would not acknowledge anything that he was saying to her, would not say yes, would not say no, wouldn't say anything but defy him. The defiance is not simply verbal. It can be written on a person's face. It can be in their gestures. We objected to the admission of the videotape for what I thought were some obvious reasons that it didn't comply with the Illinois Rules of Evidence regarding admission of the video. The foundational witness could not say ever that she saw the video from front to back. Did you have the opportunity to view the video before the actual start of the trial? The judge put it on his computer? I tried to view the video, a copy that I had, and there were several different versions of it, unfortunately. I could not get it to work on my computer, even the night before, because it was in the hands of the alleged victim and then her mom. The folks on that side, for a couple of days before they took it,  Well, were different versions put into the record? No. Just the one? Just the one. And is it true that the morning of trial, that the judge offered you to look at his copy on his computer where he had downloaded a special program? Yes, eventually it went there. And you chose not to view it all because it was going to take so much time? No, we viewed the first part of it, I think approximately the first 20 minutes of it. Why not the end? Because I knew from all other versions that I had seen that after about the 12-minute mark, it was nothing other than the dad explaining to his daughter that she was going to have trouble in life if she couldn't somehow recognize the area that she could not tread into and that if she just defied everything and everybody, she was going to have trouble. I didn't see the entire thing that day in court. So I don't know what was in the last approximately 15, 20 minutes of it. But the witness, the only place that she could have seen it would have been in the courtroom. Did you renew your objection at that time, even though you weren't looking at the entire video? I objected before the court admitted it into evidence. The court asked if we had an objection. And I started by saying no, except for the things that we previously raised in pretrial motion. Just finish your thought. Go ahead and finish your sentence. And the fact that you cannot see the gestures and the emotions that are shown visually because the film is too dark and it didn't show the room. Thank you. We'll give you time for rebuttal. Thank you. Your Honor's counsel, taking up the second issue first, the admissibility of the video recording. Waiver is appropriate here not only because there was no post-trial motion, which ENOC requires, but it's also appropriate because there was no objection to foundation made, and that's the issue that's raised for the first time on appeal. The issue below, the objection to the admissibility, was that it was illegally recorded because there was an audio portion. The court reached ahead. And this was a pretrial motion to suppress in a hearing that was held on 4-12-12. The court found that there was no government action so that it wasn't suppressible as an illegal recording. And the court rejected the argument that it was too poor of a quality to be viewed. So there was no objection below on the basis of foundation. That's raised for the first time on appeal. So it is waived. And in order to avoid waiver, the defendant claims plain error, but does not argue either prong, does not show that the evidence was closely balanced, and doesn't show that he was prejudiced by the exhibit's admission. And to answer your question, I believe People's Exhibit 1 was admitted substantively, and I do believe that the court considered it that way in deciding issues of credibility as well as what did occur. It was, I believe, admitted substantively, not just demonstratively. And it was properly admitted. But back to the first prong, there's no showing of any prejudice. The defendant admitted striking his daughter as charged, and that's what's shown on the video. The defendant himself relied on the video to argue that it showed Alexis lifting her arm to strike him. The court did not see that on the video, and the court did not believe the defendant. The court believed Alexis' testimony that she at no time lifted her arm to strike her father. So there can't be any prejudice that he can argue because he relied on the video just as well. Was there a defamation of his substantial rights? So a series that affected the fairness of the trial? No, because the defendant doesn't talk about the foundation with the admission of videotape, and so in that sense it's waived as well on appeal for failure to argue it. But it was properly admitted, no abuse of discretion of the court in admitting it because there was a proper foundation waived. Alexis herself authenticated the video. She had personal knowledge of what occurred during that section of time that was videotaped. She testified that there was nothing in People's Exhibit 1 that did not occur during that time period. She testified that there was nothing that was cut from it and that it fairly and accurately depicted what occurred on August 16, 2011. The defendant, in his testimony, admitted the behavior that's shown on People's Exhibit 1. So he also, in his testimony, authenticated this videotape, although he did testify that it would show that Alexis lifted her arm to strike him, and it does not. Alexis testified that she was a competent operator of the camera, that she'd operated it before and she'd used it to video other events. She testified about how she set the camera up and how the record light was on and that she had hidden it under some clothing or something so that her father would not notice the recording light was on. The fact that there is a video recording is some indication that the camera itself was functioning and it's true, it's not a totally excellent quality, and there are some times when the light comes in or shadows and you can't see everything, but it was enough to show to the court, as a trier of fact, that the court could recognize the persons depicted and the events depicted and the actions depicted and the furniture depicted. And so, as I said, there was no evidence, no objection to foundation and no evidence of tampering. And the court also stated on the record that People's Exhibit 1 was exactly the same videotape that he had viewed at the hearing on the motion to suppress. So there was no serious deprivation of substantial rights that affected the fairness of the trial, given the fact that a proper foundation was laid and there was no use of discretion in admitting the videotape. Now, as to the first issue, the defendant raised the defense of reasonable parental discipline, and that's a recognized defense, even though it's not a statutory one. Since the defendant raised that, the people had the burden to prove beyond a reasonable doubt that the discipline that was administered exceeded a reasonable standard. And this was a matter for the trier of fact to determine, and the trier of fact found that it was not reasonable. And that is supported by the record. The record shows that Alexis was seated in her bedroom, and she had trashed her bedroom. She had pulled her clothing out. The People's Exhibit 1 shows that. She testified that the reason she set up that video camera was because she wanted people to believe her about what went on. She knew that her father was coming. She knew that she had done something that had irritated her stepmother, and she knew he was coming, and so she set it up. And then she trashed her bedroom, and she's obviously upset. And she's sitting on her dresser with a mirror behind her. When her father comes in, he's very upset. It's not really a stage performance. She has no control over what he's going to do. But he comes in, and he is extremely angry. He's out of control. He throttles Alexis by the neck, and the court made a finding that it was by the neck and not by the jaw. Alexis testified in People's Exhibit 1 shows that he grabs her by the neck, and he shoves her back onto the mirror, and the mirror tips back into the wall. And then he does it again, and he continues to throttle her by the neck. He's yelling at her to answer questions, and finally she testified that she's having difficulty breathing because he's squeezing her neck. And finally she's able to croak out yes, and he lets her go. But then shortly thereafter, he slaps her so hard with his open right hand, hard enough that her head swings back, snaps back toward her, yet almost over her right shoulder. So it was a forcible blow, even though it was with an open hand. During this time, he is lacing his conversation with her, or he's yelling at her with 26 different profanities, which the court noted. As a whole, and he also disparages her mother, as a whole this incident went beyond the reasonable bounds of discipline and did not constitute a defense. And the court properly found him guilty of domestic battery. Are there any questions? Thank you, Ms. McCormick. Rebuttal. Thank you. The exact quotes from Alexis during the trial are telling, along with, of course, the prelude to set up the history of the discipline, the history of a bad behavior. The quote from the alleged victim, I recited on page four of The Appellant's Brief, but in substance it is, she turned on the camera and then I took my clothes out of my drawers because I was mad and I knew that if I was leaving, I was taking my clothes with me.  She offered again, I was mad, I did it all out of anger, I wasn't thinking clearly. All I know is I was mad at him, I was mad at Carrie, and I was going to get it on video tape. And that again is the alleged victim in her testimony. The court made a finding that it was essentially a set up. There... Did you raise any defenses related to the set up, entrapment, anything like that? Not specifically. In arguing against the admission of the video tape, it seemed obvious to me that the proof of anything, including the reasonableness of the defendant's behavior, could not be available without the... Well, it was the state's burden to show that the defendant did not meet the standards of reasonableness in his acts of discipline. So the fact that the daughter essentially set it up without the dad knowing it, knowing that he hadn't slept in a long time, knowing what her motive was, and knowing what she wanted and she wasn't going to stop until she got there, that seemed like a true entrapment in the sense that she was in control of the setting. But entrapment in that setting, the thing that concerned me was he also admitted that once before, approximately four years prior to that time, he slapped her, and found that it actually did make her get with the program, so to speak, and behave and not just be a wildly out of control preteen at that time. But doesn't the common law recognition of the right of a parent to discipline go to the parent's conduct and not the child's conduct? Or do you think it goes to both? I don't know how you can excise the parent's conduct from what the parent is dealing with in front of her or him. So you think that depending on the conduct of the child, more force could be reasonable? Absolutely. And it has to be based on a lot of different factors. What must a parent see as a sign of recognition from their child that they understand that they've been doing something wrong, they're going to try to change that, they truly are doing something other than outright defying the parent. Where do you go with that? Where do you stop? And there's testimony from a defendant that he thought that it would not be a good idea to spank his 15-and-a-half-year-old daughter in light of all the things that go on out there and allegations that might be available in that setting. He did not want to touch her backside for any reason. And he was in one of those situations where what he went in to deal with discipline-wise was not what he had to deal with once he got in there. There were several minutes that went by before he actually took any action against her physically. Yes. Approximately 12 minutes. What did he testify? Why didn't he walk away? He did. He did walk away once. He told the daughter that she had to have the room cleaned in 30 minutes. Aside from dealing with the video that she took of her brother that she was going to send to her mom, which was the original issue. The second issue was the cleaning of the room. Clean it up in 30 minutes. And then the verbal defiance escalated. At the 12-minute mark, the defendant says out of frustration. And essentially, not knowing how else to attend to it, if he walked away, that was the end of the line for him. Thank you, sir. Thank you. All right. Thank you for your briefs and your arguments. We'll take this matter under advisement and issue a decision in due course.